AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CELERINO JARAMILLO,<br>  aka "Bizzy,"<br><br>Defendant | Case No.   2:23-mj-03900-DUTY |

LODGED
CLERK, U.S. DISTRICT COURT
8/2/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CD___ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
08/02/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: ___KL___ DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 25, 2023, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(C)<br>18 U.S.C. § 922(g)(1) | Possession with intent to distribute methamphetamine; Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

  ☒ Continued on the attached sheet.

/s/
Complainant's signature

Akash Udeshi, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   August 2, 2023

*Alicia G. Rosenberg*
Judge's signature

City and state:   Los Angeles, California

Hon. Alicia G. Rosenberg, U.S. Magistrate Judge
*Printed name and title*

AUSA: Christopher C. Kendall (x2576)

**AFFIDAVIT**

I, Akash Udeshi, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Sergeant of the Los Angeles Police Department ("LAPD") and have been employed as such since October 2016, and prior to that as a police officer for the Los Angeles Police Department since July 2000. I am also currently a Federal Bureau of Investigation ("FBI") Task Force Officer ("TFO") assigned to the Los Angeles Metropolitan Task Force on Violent Gangs (the "Task Force") and have been so assigned since March 2020.

2. I have twenty-three years of law enforcement experience and hold a Bachelor of Science Degree in Criminology from the University of La Verne. During my time as a uniformed LAPD officer, I worked various assignments including in the Gang Enforcement Detail, as a Field Training Officer for recruits that graduated from the academy, in Narcotics, and as part of the Metropolitan Division's City-Wide Crime Suppression Unit. I have been involved in over a thousand narcotics related investigations and have arrested several hundred individuals for possession and sale of various controlled substances, including but not limited to cocaine, methamphetamine, heroin, fentanyl, and prescription medication. I also have participated in several hundred gang related investigations where I identified, interviewed, gathered intelligence, and arrested hundreds of gang members for various crimes, including but not limited to

1

murder, narcotics trafficking, possession of firearms, robbery, assault, and extortion. As a LAPD Sergeant, I have worked uniformed patrol, and as a Gang Enforcement Detail Supervisor. Over the past twenty-two years, I have attended various schools and conferences specifically related to gangs and narcotics, and I am a member of the California Gang Investigators Association ("CGIA").

3. As a TFO, I received training in and have been involved in the investigation of violations of federal law, including violations of federal drug conspiracy laws. I have authored and executed search warrants involving distribution-quantities of narcotics and other violations of federal law. I have participated in gang investigations involving the organized distribution of illegal drugs and have become familiar with the methods used by drug traffickers to avoid detection by law enforcement, including the use of prepaid cellular telephones and phones subscribed to third parties, counter-surveillance techniques, coded and ambiguous language, multiple vehicles without license plates, and false identities. I have become familiar with the methods, language, structures, and criminal activities of street gangs and transnational gangs operating within and outside of this judicial district. As part of these investigations, I have conducted physical surveillance and interviewed witnesses as well as subjects.

4. Furthermore, as a TFO, I authored and was the affiant for a federal wiretap related to the Playboys gang. I also monitored a federal wiretap related to the Playboys gang during

2

the first stage of the investigation.  During which time I monitored intercepted calls, short message service ("SMS") text messages, and Instagram messages, which I transcribed.  Based on the content obtained from the intercepted wire and electronic communications, I conducted surveillance, authored search warrants, seized evidence, as well as interviewed and debriefed individuals associated with criminal activity.

     5.   I am currently one of the TFO's assigned to an investigation of the Florencia 13 gang, where members of Florencia 13 and their associates, are trafficking narcotics, including fentanyl and methamphetamine in Los Angeles County, as well as firearms.

     6.   Based on my training and experience and knowledge of this investigation I know that methamphetamine is sold in different quantities, for use on the street, to include personal amounts and quantities for sale.  Often, when a narcotics user purchases as a "user quantity," it will be sold in small gram sized baggies.  The methamphetamine will generally be the same color, texture, and consistency as the drug when it is sold for distribution quantities.  In that case, methamphetamine is typically sold in one ounce or one-pound quantities, which are then resold for smaller amounts for a profit.  The drug is identified as an off-white crystal-like substance, either in large crystal chunks if higher quality, or more of a powder for lower quality.  I know narcotics suppliers go to great lengths to conceal their narcotics from law enforcement, rival drug dealer, or users.  For example, "traps" are found in vehicles,

which are after-market locations fashioned inside a vehicle to hide or store contraband, so it is not visible to the naked eye. The owner of the vehicle may be the only person that knows where the location is and how to access it.  Further, I know drug dealers to carry firearms to protect their supply of narcotics and money.  This is common practice in the narcotics trade.

## II. PURPOSE OF AFFIDAVIT

7.   This affidavit is made in support of a criminal complaint and arrest warrant against CELERINO JARAMILLO, also known as "Bizzy" ("JARAMILLO") for violations of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (possession with intent to distribute methamphetamine) and 18 U.S.C. § 922(g)(1) (felon in possession of a firearm).

8.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint, arrest warrant, and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. SUMMARY OF PROBABLE CAUSE

9.    On April 25, 2023, JARAMILLO was arrested by Los Angeles Police Department ("LAPD") Newton Gang Enforcement Detail ("GED") officers near 59th Place and Compton Avenue, in Los Angeles, California.  When officers searched JARAMILLO's

4

vehicle, they found a loaded firearm; suspected narcotics, including methamphetamine, heroin, and marijuana; and other tools of the narcotics distribution trade, namely, narcotics packaging products, a digital scale, and currency.

## IV. STATEMENT OF PROBABLE CAUSE

### A. Arrest

9. Based on my review of law enforcement reports, conversations with other law enforcement agents, and my own knowledge of the investigation, I am aware of the following:

10. Prior to JARAMILLO being arrested on April 25, 2023, earlier in the day, at approximately 3:30 p.m., investigators including FBI Special Agent Seamus Kane and TFO Garrett Vanhooser observed JARAMILLO meet with another individual identified as Frank Toro, aka "Oso" ("TORO").[1] During the surveillance on April 25, 2023, both SA Kane and TFO Vanhooser observed JARAMILLO driving the same Mercedes in which he was later arrested when he met with TORO.

11. On April 25, 2023, LAPD Gang Enforcement Detail officers were near 59th Place and Compton Avenue, in Los Angeles, California, when several people were observed standing in the middle of 59th Place in violation of California Vehicle Code ("CVC") section 21956 (pedestrians in the roadway). Additionally, officers saw several vehicles double parked on 59th Place in violation of CVC section 22502, which officers

---

[1] On April 25th, 2023, the Los Angeles Police Department conducted a traffic stop on a vehicle being driven by Frank Toro, aka "Oso" ("TORO"), who was identified by his California identification, as well as, through prior surveillance conducted by myself, SA Kane, and TFO Vanhooser.

believed belonged to the group of individuals seen on the street. Once the officers' presence was known, several individuals began to disperse in different directions, including JARAMILLO, who was seen running and then entering the front driver-side of a parked black Mercedes bearing California vehicle license number 8NNV994 ("Mercedes").[2] Officers Otamendi and Vargas saw JARAMILLO running and entering the Mercedes. According to records at the California Department of Motor Vehicles ("DMV"), the Mercedes is currently (and was in April 2023) registered to CELERINO JARAMILLO at 17553 Pine Ave, Fontana 92335.[3]

    12. Based on the officers' observations of JARAMILLO's actions inside his vehicle, which included JARAMILLO appearing to stash or hide something in the rear right portion of the car, JARAMILLO was ordered out of his vehicle and detained without incident. Although officers were not able to see JARAMILLO's hands while JARAMILLO was in the Mercedes, officers saw that

---

[2] The Mercedes was a black four door sedan with two front bucket seats and a bench seat in the back.

[3] JARAMILLO has been seen by investigators driving that same Mercedes on several occasions. Specifically, on May 4, 2023, the Mercedes was parked outside of a casita (an illegal gambling and bar) located at 2033 East Florence Avenue, in the County of Los Angeles. At that time, investigators served a state warrant at the casita. At that time, JARAMILLO was detained inside the casita during and after the service of the warrant, and the keys to the Mercedes were in his possession, namely, on his person. During a pat down search of JARAMILLO's person, the keys of the Mercedes were found. Officers conducted pat downs of occupants of casitas as they exited the casita to ensure that these occupants were not armed as safety precaution of the officers and civilians. Additionally, JARAMILLO gave officers verbal consent to search the Mercedes, and no contraband was located during the search on May 4, 2023.

JARAMILLO's attention was focused in the area of the Mercedes, and his body movement appeared as though he was attempting to conceal contraband.  Once detained, Officer Vargas, standing outside the Mercedes, looked inside JARAMILLO's illegally double-parked vehicle through the closed windows and observed numerous baggies and suspected marijuana in the back seat of JARAMILLO's vehicle.  Based on Officer Vargas' belief that JARAMILLO was in possession of the marijuana for the purpose of sale, in addition to the movements JARAMILLO was seen making inside the vehicle prior to his detention as though he was concealing contraband, Officer Vargas searched the interior of JARAMILLO's vehicle.[4]  A photograph of suspected marijuana is included below:



---

[4] Based on my training and experience, I know that multiple baggies of marijuana indicate that the marijuana was for resale.

13. During the search, Officer Vargas found approximately $100 in the vehicle's center console and approximately $749.16 inside a backpack located inside the vehicle, on the front passenger seat.[5] In addition, Officer Vargas also found a digital scale and empty sandwich bags in the backpack. As Officer Vargas continued to search, he saw a clear plastic baggie protruding from a plastic backing from the rear of the front passenger seat, which appeared to be a "trap," as described above. This hidden compartment was built into the back of the passenger seat and was being used to conceal contraband. From the naked eye it would not be obvious, however, because JARAMILLO attempted to secure the narcotics and firearm from officers quickly, a portion of the plastic baggie was sticking out from the hidden compartment. While conducting a search of the vehicle, incident to arrest, Officers later found three additional baggies (weighing 140.2, 6.1, and 8.6 grams) from the same compartment, which are believed to each contain methamphetamine based on the substance in the baggies appearing to be an off-white, crystal like substance, resembling methamphetamine, a Schedule II controlled substance. Based on the officer's training, experience, and knowledge of narcotics, the substances matched the consistency, size, shape, and color of methamphetamine sold on the streets. Photographs of the bag protruding from the hidden compartment and the suspected methamphetamine are included below:

---

[5] Additionally, Officer Austin Garza found approximately $983.40 from JARAMILLO's person prior to him being booked.





14.     Additionally, Officer Vargas saw the butt of a tan colored firearm (serial no. BGAS461), which he then recovered from the same hidden compartment or "trap" in which he found the suspected methamphetamine.  The firearm had one round of ammunition in the chamber and an additional 15 rounds in the

9

magazine. Based on my training and experience and knowledge of firearms, I know that to have a "round in the chamber," means the firearm is loaded and ready to be fired without any further manipulation. In the context of narcotics traffickers, it means that the weapon is ready to shoot and/or use defend the narcotics stash, money, or person selling the narcotics. A photograph of the firearm is included below:



15. Based on my training, experience, and knowledge of narcotics traffickers, and the seizure of cash, numerous types of drugs, baggies, scale, and a firearm, I believe that JARAMILLO was using the Mercedes as a mobile drug distribution operation. Furthermore, I believe that the hidden compartment was used by JARAMILLO to transport drugs from location to location safely and without notice if stopped by the police. However, I also believe that JARAMILLO was able to easily retrieve the drugs and firearm when necessary.

10

### B. Criminal History

16. On July 28, 2023, I reviewed certified conviction documents for JARAMILLO and learned that he has previously been convicted of the following felony crimes punishable by a term of imprisonment exceeding one year:

    a. On or about March 6, 2014, a violation of California Penal Code section 245(A)(2) (Assault with a Deadly Weapon), in the Superior Court for the State of California, County of Los Angeles, Case Number VA129916;[6] and

    b. On or about September 15, 2017, a violation of California Health and Safety Code section 11378 (Possession of a Controlled Substance for Sale), in the Superior Court for the State of California, County of Orange, Case Number 13WF1323.

### C. Drug Test

17. The narcotics, specifically the suspected methamphetamine, was sent to a DEA laboratory for testing on July 25, 2023. The results are still pending.

### D. Interstate Nexus

18. On July 26, 2023, Special Agent ("SA") Christopher Harris, an FBI Interstate Nexus Expert, examined the handgun and ammunition and confirmed that the handgun and ammunition were manufactured outside of the State of California. Because the handgun and ammunition were found in California, I believe that it has traveled in and affected interstate commerce.

---

[6] On April 30, 2013, JARAMILLO and a co-defendant were arrested shortly after being identified by a victim and law enforcement as two suspects that had committed a shooting into a residence.

## V. TRAINING AND EXPERIENCE ON DRUG OFFENSES

19. Based on my training and experience and familiarity with investigations into drug trafficking conducted by other law enforcement agents, I know the following:

    a. Drug trafficking is a business that involves numerous co-conspirators, from lower-level dealers to higher-level suppliers, as well as associates to process, package, and deliver the drugs and launder the drug proceeds. Drug traffickers often travel by car, bus, train, or airplane, both domestically and to foreign countries, in connection with their illegal activities to meet with co-conspirators, conduct drug transactions, and transport drugs or drug proceeds.

    b. Drug traffickers often maintain books, receipts, notes, ledgers, bank records, and other records relating to the manufacture, transportation, ordering, sale, and distribution of illegal drugs. These records are often maintained where drug traffickers have ready access to them, such as on their cell phones and other digital devices, and in their vehicles and residences.

    c. Drug traffickers often keep the names, addresses, and telephone numbers of their drug trafficking associates on their digital devices and in their residence. Drug traffickers often keep records of meetings with associates, customers, and suppliers on their digital devices and in their vehicles and residence, including in the form of calendar entries and location data.

      d.    Drug traffickers often use vehicles to transport their narcotics and may keep stashes of narcotics in their vehicles in the event of an unexpected opportunity to sell narcotics arises.

      e.    Drug traffickers often maintain on hand large amounts of United States currency to maintain and finance their ongoing drug trafficking businesses, which operate on a cash basis.  Such currency is often stored in their residences and vehicles.

      f.    Drug traffickers often keep drugs in places where they have ready access and control, such as at their vehicles and residence or in safes.  They also often keep other items related to their drug trafficking activities in their vehicles, residence, such as digital scales, packaging materials, and proceeds of drug trafficking.  These items are often small enough to be easily hidden and thus may be kept at a drug trafficker's vehicle or residence.

//
//
//

## VI. CONCLUSION

20. For all the reasons described above, there is probable cause to believe that JARAMILLO violated 21 U.S.C. §§ 841(a)(1), (b)(1)(C) (possession with intent to distribute methamphetamine, a Schedule II controlled substance) and 18 U.S.C. § 922(g)(1) (felon in possession of a firearm).

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this  2nd  day of August   , 2023.

_Alicia G. Rosenberg_
UNITED STATES MAGISTRATE JUDGE