ROBERT M. BERNSTEIN  (SBN 183398)
LAW OFFICES OF ROBERT M. BERNSTEIN
9465 Wilshire Boulevard, Suite 300
Beverly Hills, California 90212
Telephone (310) 477-1480
Email: robert@california-law.org

Attorney for Defendant
JULIO CESAR RODRIGUEZ

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, </br></br> Plaintiff, </br></br> v. </br></br> JULIO CESAR RODRIGUEZ, </br></br> Defendant. | Case No. 2:23-cr-00411-HDV-16 </br></br> DEFENDANT'S SENTENCING MEMORANDUM </br></br> Date:  November 13, 2025 </br> Court: Hon. Hernan D. Vera |

Defendant, JULIO CESAR RODRIGUEZ, through counsel, hereby and herewith submits his Sentencing Memorandum.  Defendant reserves the opportunity to make additional comments through counsel at the sentencing hearing in this matter.

Date:  October 24, 2025            Respectfully submitted,


                         By     */s/ Robert M. Bernstein*
                                ROBERT M. BERNSTEIN
                                Attorney for Defendant
                                JULIO CESAR RODRIGUEZ

1

## I.

## OVERVIEW AND RECOMMENDED SENTENCE

On July 24, 2025, Julio Cesar Rodriguez (Rodriguez) pled guilty to Count 4 of the Indictment charging a violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A) - Conspiracy to distribute and possess with intent to distribute controlled substances.

The U.S. Probation Office (U.S.P.O.) initially assessed Rodriguez's total applicable offense level as 24, which, due to his criminal history category II, resulted in a sentencing range of 57 to 71 months. However, at that time, Rodriguez had not met all five safety-valve criteria, leading the U.S.P.O. to conclude that he faced a statutory minimum sentence of 120 months. Having now satisfied the fifth safety-valve criterion, his offense level has been adjusted to 22, with a new guidelines range of 46 to 57 months.

Mr. Rodriguez fully and unequivocally acknowledges the seriousness of his conduct and accepts responsibility for his actions. He is deeply remorseful for the choices he made, choices that were unlawful and harmful to himself, his family, and his community. Mr. Rodriguez is acutely aware of the long-term consequences of his actions and is committed to making amends by maintaining his sobriety and mental health treatment.

As detailed below, Mr. Rodriguez's case presents extraordinary mitigating circumstances, including: (1) His long history of mental health disorders and self-medication; (2) His polysubstance abuse and addiction; (3) His traumatic childhood during which he suffered physical and sexual violence; (4) His minor role in the offense and (5) The need to avoid unwarranted sentencing disparities. These factors strongly support a downward variance from the advisory Guidelines range and justify the requested sentence.

Accordingly, the defense submits that a sentence of time served for the 15 months he has been in custody would be "sufficient, but not greater than necessary" to fulfill

the objectives of 18 U.S.C. § 3553(a). Such a sentence would appropriately reflect the unique mitigating circumstances of this case while serving the interests of justice.

## II.
## OBJECTIONS TO THE PSR'S CALCULATED OFFENSE LEVEL AND ADVISORY GUIDELINE RANGE

The U.S.P.O. determined that Rodriguez's base offense level is 30, pursuant to U.S.S.G. § 2D1.1(a)(5) and § 2D1.1(c)(5), which correspond to the quantity of controlled substances attributable to him. (PSR ¶¶ 44–69.)

The U.S.P.O. further found that a three-level decrease is warranted pursuant to U.S.S.G. § 3B1.2(b), based on Defendant's mitigating role in the offense. As Rodriguez's participation was limited in both scope and authority; he did not exercise decision-making power, recruit others, or receive substantial profit from the offense.

Additionally, the U.S.P.O. determined that Rodriguez's timely acceptance of responsibility merits a three-level reduction under U.S.S.G. § 3E1.1(a)–(b). Defendant promptly accepted responsibility, entered a guilty plea, and has demonstrated genuine remorse for his conduct.

Accordingly, the U.S.P.O. calculated a total offense level of 27. (PSR ¶ 50.) The U.S.P.O. also determined that Rodriguez has a criminal history score of three, placing him in Criminal History Category II. (PSR ¶ 84.) The resulting advisory sentencing range under the Guidelines is 57 to 71 months' imprisonment. (PSR ¶ 144.)

At the time the Presentence Investigation Report ("PSR") was prepared, Defendant had not yet satisfied all five "safety-valve" criteria under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2. Consequently, the U.S.P.O. concluded that Defendant remained subject to the mandatory minimum term of 120 months' imprisonment under 21 U.S.C. § 841(b)(1)(A).

However, since the preparation of the PSR, Defendant has satisfied the fifth safety-valve criterion. Therefore, pursuant to U.S.S.G. § 2D1.1(b)(18), an additional two-level decrease should be applied to his offense level. Further, under 18 U.S.C. § 3553(f), Defendant is now exempt from the statutory minimum term of ten years' imprisonment.

Accordingly, Defendant's adjusted offense level is 22, and with a Criminal History Category of II, the correct advisory Guidelines range is 46 to 57 months' imprisonment.

## III.

## THE COURT'S DISCRETION UNDER § 3553(a) AND THE GUIDING PRINCIPLES OF SENTENCING

In *Gall v. United States*, 552 U.S. 38 (2007), the Supreme Court made clear that while the Sentencing Guidelines provide an initial benchmark, they are not mandatory. A district court "should… consider all the § 3553(a) factors to determine whether they support the sentence requested by a party… [and] must make an individualized assessment based on the facts presented." *Id.* at 596–97.

Similarly, in *Kimbrough v. United States*, 552 U.S. 85 (2007), the Court reaffirmed that sentencing courts may vary from the Guidelines when they do not adequately reflect the unique circumstances of a case or the purposes of sentencing. The Guidelines "are not the only consideration," and a sentencing judge "may not presume that the Guidelines range is reasonable." *Id.* at 101. Rather, courts must exercise independent judgment to impose a sentence that is "sufficient, but not greater than necessary," to comply with the objectives of 18 U.S.C. § 3553(a).

The Supreme Court has repeatedly emphasized that sentencing is an inherently individualized process. As the Court explained in *Pepper v. United States*, 562 U.S. 476 (2011), quoting *Koon v. United States*, 518 U.S. 81, 113 (1996), "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in

the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Underlying this tradition is the enduring principle that "the punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949).

To fulfill this mandate, courts must possess and consider "the fullest information possible concerning the defendant's life and characteristics." *Pepper*, 562 U.S. at 488. Congress codified this principle in 18 U.S.C. § 3661, which provides that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

Accordingly, the following social history and background information is presented to assist the Court in crafting a just and appropriate sentence. In applying § 3553(a), the Court must weigh not only the nature and seriousness of the offense but also the statutory purposes of sentencing: just punishment, deterrence, protection of the public, and the provision of needed medical care, education, and treatment. Considered within this framework, the requested sentence represents a just, proportionate, and humane outcome for Mr. Rodriguez.

**A. Physical and Emotional Abuse in Early Childhood**

Mr. Rodriguez was raised in Los Angeles, California, by his mother and her husband, Felipe Rodriguez ("F. Rodriguez"), whom he believed to be his biological father. From approximately age five until age twelve, F. Rodriguez physically abused Mr. Rodriguez on a near-daily basis, frequently beating him with a belt so severely that it left bruises and welts on his body. Out of shame and fear, Mr. Rodriguez wore long sleeves to school to conceal the marks.

The physical violence was accompanied by continuous verbal and emotional abuse. F. Rodriguez routinely berated his son, telling him that he was "no good for nothing," that he "couldn't be relied upon for anything," and repeatedly calling him

a liar. Mr. Rodriguez was unjustly blamed for household mishaps if a younger sibling fell or disobeyed, he was held responsible and punished.

Growing up in this environment, Mr. Rodriguez internalized feelings of guilt, shame, and worthlessness. He came to believe that he was inherently defective and that nothing he did could earn love or approval. This toxic upbringing eroded his confidence and emotional stability, planting the seeds for the mental health struggles that followed him into adulthood.

Mr. Rodriguez's mother struggled with severe alcoholism and failed to protect him from the ongoing abuse in their home. Mr. Rodriguez recalled that his mother would "do anything to satisfy her husband," even when it meant turning a blind eye to his suffering. She drank daily and often invited her brothers over to join her, creating an environment of constant intoxication and instability. By the age of twelve, Mr. Rodriguez witnessed several of his uncles openly using cocaine in the living room while socializing and drinking with his mother.

Mr. Rodriguez's home life was characterized not only by violence, but also by neglect and favoritism. He remembers going to bed hungry if he expressed dislike for a meal, while his siblings were offered alternative meals. On other occasions, his parents would bring home food and treats for his brothers and sisters, leaving nothing for him. These repeated acts of exclusion made Mr. Rodriguez feel unloved, unwanted, and inferior to his siblings. Despite this mistreatment, he maintained close relationships with them, finding in his siblings the only source of companionship and belonging during an otherwise hostile upbringing.

Mr. Rodriguez's mother's failure to protect him, and her complicity in his father's abuse, taught him from a young age that his pain did not matter. The constant rejection and neglect he endured deprived him of the security and nurturing every child deserves. These experiences profoundly influenced his emotional development, contributing to deep-seated feelings of shame, resentment, and abandonment that he carried into adulthood.

**B. Sexual Abuse**

Mr. Rodriguez's parents were devout Catholics who raised him in the church. Beginning at age 7, Rodriguez was sexually abused by his priest. The sexual abuse occurred twice weekly for a period of approximately one year, until Rodriguez completed his first communion. Mr. Rodriguez disclosed the abuse to his mother who failed to protect him. Specifically, he recalled his mother was reluctant about reporting anything to the authorities because she was more concerned about an investigation also revealing the physical abuse that Rodriguez had been suffering at the hands of his father.

At age 9, two older female maternal cousins in their twenties, moved in with the Rodriguez family for a few years. For a period of approximately three years, Mr. Rodriguez was sexually abused by the two of them up to four times per week. Again, Rodriguez disclosed the sexual abuse to his mother who let him know that she found it embarrassing and threatened that if he told anyone else about it, she would get his father to straighten him out with another beating. Mr. Rodriguez's trust had been broken repeatedly by the people in place to protect him. Consequently, he suffered from anxiety and depression during childhood and developed a warped sense of who he could trust.

The cumulative effect of Mr. Rodriguez's childhood trauma cannot be overstated. Years of physical beatings, emotional humiliation, neglect, and sexual abuse left him with profound psychological wounds that persisted into adulthood. Deprived of safety, validation, and affection during his formative years, Mr. Rodriguez never developed the emotional tools necessary to cope with pain, stress, or rejection in healthy ways.

By adolescence, Mr. Rodriguez suffered from chronic anxiety, depression, and feelings of isolation. He carried an enduring sense of guilt and self-blame, believing he was responsible for the mistreatment he endured. Without access to therapy or supportive intervention, he began to internalize his trauma and suppress his

emotions, eventually turning to drugs as a means of self-medication. Substance use became his way of escaping the unresolved pain of his childhood and temporarily silencing the intrusive memories that haunted him.

As is common among survivors of early and repeated abuse, Mr. Rodriguez's trauma shaped his adult relationships and decision-making. The patterns of distrust, shame, and emotional avoidance that developed in childhood followed him throughout his life, undermining his self-worth and sense of belonging. These long-standing psychological effects provide crucial context for understanding his later involvement in the instant offense. His conduct was not driven by greed or predatory intent, but by decades of unaddressed trauma, addiction, and poor coping mechanisms rooted in a lifetime of suffering.

While Mr. Rodriguez accepts full responsibility for his actions, his history demonstrates that his path to this point was not one of moral depravity, but of survival. The offenses before the Court must therefore be viewed within the context of a man shaped by relentless abuse, who is only now beginning to confront the pain that has governed his life for decades.

**C. Mental Health**

Mr. Rodriguez's extensive history of trauma and abuse has resulted in enduring and severe mental-health challenges. Following several psychiatric hospitalizations and multiple suicide attempts, he was diagnosed with schizophrenia, a chronic psychiatric disorder characterized by paranoia, disorganized thinking, auditory hallucinations, self-harm, and emotional withdrawal. These symptoms, compounded by his long-standing depression and anxiety, have profoundly impaired his ability to function in daily life, maintain steady employment, and sustain healthy interpersonal relationships.

For most of his life, Mr. Rodriguez's mental illness went undiagnosed and untreated. In an effort to cope with the intrusive thoughts, paranoia, and overwhelming anxiety stemming from his untreated psychosis and unresolved

childhood trauma, he later turned to drugs as a form of self-medication. This maladaptive coping mechanism fueled his substance use disorder and played a central role in his involvement in the instant offense.

Since entering custody, Mr. Rodriguez has begun receiving psychiatric care and medication to stabilize his condition. He has shown marked improvement in his emotional regulation, cognitive functioning, and overall mental stability. He has expressed a sincere commitment to continuing his treatment and remaining compliant with his medication regimen. With consistent therapy, psychiatric monitoring, and substance-abuse programming, Mr. Rodriguez has a strong potential for rehabilitation and successful reintegration into society.

Under 18 U.S.C. § 3553(a)(2)(D), the Court must consider "the need for the sentence imposed to provide the defendant with needed… medical care, or other correctional treatment in the most effective manner." Mr. Rodriguez's schizophrenia, combined with his history of severe childhood trauma, makes him uniquely suited for a treatment-oriented sentence rather than a purely punitive one. A custodial sentence tailored to his psychiatric needs, followed by a term of supervised release with continued mental-health treatment, would best serve the dual purposes of public safety and rehabilitation.

**D**. **Substance Abuse**

Mr. Rodriguez has a history of polysubstance abuse, including the use of alcohol, marijuana, methamphetamine, opiates, and Trazodone. His addiction developed over years and was closely tied to his mental-health struggles and efforts to self-medicate the effects of trauma and schizophrenia.

Mr. Rodriguez began drinking alcohol at the age of twenty-one. He describes himself as a social drinker who used alcohol intermittently, with no significant abuse until recent years.

In 2012, following a serious back injury, Mr. Rodriguez was prescribed codeine and Norco for pain management. Over time, his legitimate medical use escalated

into dependency, and he began purchasing the pills illegally once his prescriptions ran out. At the height of his addiction, he was consuming six to eight pills per day. His last use of prescription opiates occurred in July 2024.

In 2013, Mr. Rodriguez developed an addiction to Trazodone, initially prescribed for sleep and depression. He began abusing the medication, taking five to six pills daily until his last reported use in July 2024.

Mr. Rodriguez began using marijuana at age forty-two. His use quickly progressed to a daily habit, which he continued until July 2024. At age fifty-two, he began smoking methamphetamine, which likewise escalated to daily use.

Mr. Rodriguez reported that on the day of his arrest for the instant offense, he was under the influence of methamphetamine, marijuana, and pain pills. This combination severely clouded his judgment and impaired his ability to think rationally. He acknowledges that his drug use directly contributed to the commission of the offense, explaining that he was motivated by the need to sustain a costly addiction that averaged approximately $400 per month. He described spending virtually all of his income to avoid withdrawal, which had become both physically and psychologically debilitating.

Mr. Rodriguez candidly admits that his substance abuse took a devastating toll on his personal life. It caused the breakdown of his marriage, estrangement from his children, and financial instability.

Mr. Rodriguez's addiction history reflects not moral weakness, but years of untreated trauma and mental illness. His willingness to confront these issues and seek help marks a critical step in his rehabilitation and supports the defense's request for a treatment-centered sentence.

## IV.

## APPLICATION OF THE § 3553(a) FACTORS

Under 18 U.S.C. § 3553(a), the Court must impose a sentence that is *"sufficient, but not greater than necessary"* to achieve the purposes of sentencing. In making that determination, the Court must consider:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;
2. the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment;
3. the need for deterrence and protection of the public;
4. the need to provide the defendant with education, vocational training, and medical or correctional treatment; and
5. the need to avoid unwarranted sentencing disparities among similarly situated defendants.

When applied to Mr. Rodriguez's case, these factors overwhelmingly support a downward variance and a sentence of time served.

### A. The Nature and Circumstances of the Offense

Mr. Rodriguez's offense is serious, and he does not minimize its significance. However, his conduct must be viewed within the context of his long history of untreated mental illness, trauma, and substance dependency. His participation in the offense was driven not by greed or intent to profit, but by addiction and desperation to maintain his own drug use. He was a low-level participant in a larger conspiracy and exercised no leadership or managerial authority. His involvement reflects impaired judgment, not predatory intent.

Given these circumstances, a lengthy custodial sentence would not serve the goals of deterrence or justice. Rather, a measured sentence that emphasizes treatment and continued supervision will better address the root causes of his behavior and foster long-term rehabilitation.

### B. The History and Characteristics of the Defendant

Mr. Rodriguez's personal history is among the most compelling mitigating factors in this case. From early childhood, he endured daily physical abuse, emotional neglect, and repeated sexual assaults by those he trusted, including a priest and family members. These traumatic experiences left him with severe psychological scars and ultimately contributed to the onset of schizophrenia, depression, and substance dependence.

Despite this painful past, Mr. Rodriguez has shown remarkable progress since his arrest. He has maintained sobriety, stabilized his mental health through medication and counseling, and demonstrated insight into his behavior. He has expressed genuine remorse, accepted full responsibility for his actions, and shown a clear desire to rebuild his life. His mental illness and childhood trauma, while not excuses, explain the path that led him to this point and underscore his need for continued treatment and stability rather than excessive punishment.

As the Supreme Court held in *Kimbrough v. United States*, 552 U.S. 85, 101 (2007), the Sentencing Guidelines are only "the starting point and initial benchmark." Courts must ultimately craft individualized sentences that reflect "the history and characteristics of the defendant." In this case, those characteristics are extraordinary and compelling.

### C. The Need for the Sentence Imposed

Under § 3553(a)(2), the Court must consider the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future crime, and protect the public.

A sentence of time served satisfies each of these objectives. Mr. Rodriguez has already served significant time in custody and has used that time productively to begin addressing the very issues that brought him before the Court. His rehabilitation demonstrates that extended incarceration is unnecessary to achieve deterrence or to protect the public.

Moreover, § 3553(a)(2)(D) instructs courts to consider the need to provide the defendant with "needed educational or vocational training, medical care, or other correctional treatment." Given Mr. Rodriguez's diagnosis of schizophrenia and his long-standing substance-abuse disorder, the most effective way to ensure long-term stability and community safety is through structured treatment, specifically continued psychiatric care, and community-based aftercare during supervised release.

### D. The Need to Avoid Unwarranted Sentencing Disparities

Imposing a within-Guidelines sentence would create an unwarranted disparity between Mr. Rodriguez and similarly situated defendants whose offenses were driven by addiction, trauma, and mental illness, and who played minor roles in broader conspiracies. Courts nationwide have recognized that defendants suffering from serious psychiatric disorders and substance dependence merit compassionate, treatment-based consideration.

In this case, other similarly situated co-defendants received significantly lesser or non-custodial sentences:

- Jesse Vasquez (Defendant #5) – 36 months' custody
- Kevin Alexis Ontiveros (Defendant #8) – 18 months' custody
- Lynette Leal (Defendant #19) – 36 months' probation

Mr. Rodriguez's role in the conspiracy was limited; his criminal history is minimal and entirely non-violent; and his conduct was driven by addiction rather than profit or predation. Imposing a substantially longer term of imprisonment would therefore result in punishment disproportionate to his actual culpability and inconsistent with sentences imposed in comparable cases.

### E. The Kinds of Sentences Available

Section 3553(a)(3) directs the Court to consider the range of sentencing options. A sentence of time served, followed by a term of supervised release with conditions requiring participation in substance-abuse and mental-health treatment, will satisfy

13

all statutory objectives. Such a sentence will provide accountability while offering a realistic path toward continued rehabilitation and reintegration into society.

**F. The Appropriate Sentence**

Considering the totality of the circumstances, a sentence of time served is "sufficient, but not greater than necessary" to comply with the purposes of § 3553(a). Such a sentence will:

- Reflect the seriousness of the offense;
- Promote respect for the law;
- Provide just punishment proportionate to Mr. Rodriguez's limited role and personal circumstances;
- Afford adequate deterrence while addressing the root causes of his conduct; and
- Ensure continued psychiatric and substance-abuse treatment to promote lasting rehabilitation and community safety.

# V.
# CONCLUSION

Mr. Rodriguez stands before this Court deeply remorseful for his actions and fully accepting of his responsibility. He acknowledges that his conduct violated the law and caused harm to himself, his family, and his community. However, his history demonstrates that his offense was not the product of greed, violence, or disregard for the law, but rather the tragic culmination of a lifetime of untreated trauma, mental illness, and addiction.

As set forth above, Mr. Rodriguez's background reveals extraordinary mitigating circumstances: a childhood marked by physical, sexual, and emotional abuse; a lifelong struggle with schizophrenia and severe mental illness; and years of self-medication through substance use to manage the psychological pain of his experiences. Despite these immense challenges, Mr. Rodriguez has shown

meaningful progress since his arrest. He has maintained sobriety, stabilized his mental health through medication and counseling, and demonstrated a sincere commitment to continued treatment and to living a law-abiding, productive life.

Under 18 U.S.C. § 3553(a), the Court must impose a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing. As the Supreme Court held in *Kimbrough v. United States*, 552 U.S. 85, 101 (2007), the Sentencing Guidelines are not mandatory but serve as a "starting point and initial benchmark" for courts to consider, while ultimately crafting a sentence that reflects the individual history and characteristics of the defendant. In this case, those characteristics are both extraordinary and compelling.

A sentence of time served followed by a period of supervised release with continued mental-health and substance-abuse treatment, would fully satisfy the statutory goals of sentencing. Such a sentence would appropriately balance accountability with compassion, ensuring that Mr. Rodriguez continues the progress he has made while receiving the medical care and structured support essential to his rehabilitation.

Date: October 24, 2025            Respectfully submitted,

                                  LAW OFFICES OF
                                  ROBERT M. BERNSTEIN


                          By      /s/ Robert M. Bernstein
                                  ROBERT M. BERNSTEIN
                                  Attorney for Defendant
                                  JULIO CESAR RODRIGUEZ